**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| SAYO "VICTORIA" OSINUBI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 1:25-cv-12262-JEK |
| SANOFI PASTEUR, INC., | ) |
| SANOFI-AVENTIS U.S. LLC, and | ) |
| BIOVERATIV U.S. LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

**KOBICK, J.**

Plaintiff Sayo "Victoria" Osinubi brings this action against defendants Sanofi Pasteur, Inc., Sanofi-Aventis U.S. LLC, and Bioverativ U.S. LLC (collectively, "Sanofi"), alleging that, as her employer, they collectively discriminated against her based on her race and sex, subjected her to a hostile work environment, failed to promote her and provide equal pay, and retaliated against her for complaining about these violations. Sanofi filed a motion to dismiss all of her claims. For the reasons that follow, the motion will be granted in part and denied in part.

## BACKGROUND

The following facts, which are assumed true on a motion to dismiss, are drawn from the amended complaint and documents fairly incorporated by reference into that pleading, including Osinubi's letter to Sanofi leadership about the alleged discriminatory treatment. *See* ECF 7, ¶ 50; ECF 18, at 21-28; *Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9, 15 (1st Cir. 2024).

Osinubi, a Black woman, began her employment at Sanofi in 2019 as a senior administrative assistant on the Rare Blood Disorders ("RBD") team. ECF 7, ¶¶ 9-10, 12. She

reported to Jeffrey Schaffnit, General Manager of the U.S. RBD Franchise, and Francois-Xavier Etaix, Head of Hemophilia. *Id*. ¶ 11. During her employment, Osinubi was repeatedly given tasks and responsibilities equivalent to those of non-Black colleagues who were compensated at higher rates. *Id*. ¶ 19. These assignments included "more involved and complex tasks" routinely assigned to associate product managers, product managers, and senior product managers, but her job title and pay rate remained at that of an administrative assistant. *Id*. ¶¶ 20-21. For over five years, Osinubi remained at the lowest position on the RBD team while non-Black colleagues with less experience and tenure were promoted or transferred into higher paying roles. *Id*. ¶¶ 23, 25-26, 28, 58. As the only Black woman on the RBD team, she remains the sole original member to not have been promoted. *Id.* ¶ 26.

In June 2021, Osinubi accepted a temporary "gig" role supporting the ALTUVIIIO product launch. *Id.* ¶ 30.[1] According to Sanofi's policies and practices, a gig role is a six-month, short-term assignment that does not exceed ten hours of work per week. *Id.* Osinubi agreed to accept the role based on Schaffnit's promise that she would be promoted at the completion of the assignment. *Id.* She remained in this role for two years and five months, during which time she worked over forty hours per week and performed product manager and senior product manager duties without a salary increase or change in title. *Id*. ¶¶ 30, 33. Schaffnit praised her with positive written evaluations, assured her that the gig work would result in career advancement with open roles on the Hemophilia team, and told her that she would shortly be promoted to product manager. *Id.* ¶¶ 31-32, 34. Instead of a promotion, however, Osinubi was excluded from team activities and

---

[1] ALTUVIIIO is an injectable medicine used to control and reduce the number of bleeding episodes in people with Hemophilia A. FDA, ALTUVIIIO, https://www.fda.gov/vaccines-blood-biologics/altuviiio [https://perma.cc/J4WW-ECL2]; *see Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (information on government websites is subject to judicial notice).

recognition. In a marketing meeting held by Etaix in February 2023, every team member was recognized for their contribution to the ALTUVIIIO product launch except Osinubi. *Id.* ¶ 35. Osinubi was also left out of a team volunteer event in November 2023; the event went forward even though she had been disinvited from it and told it was cancelled. *Id.* ¶¶ 38-39. In other marketing meetings, she was not recognized or allowed to speak, while a newly hired non-Black junior colleague with limited responsibilities was praised and highlighted. *Id.* ¶¶ 36-37.

Osinubi wrote a letter (the "Schaffnit Letter") in February 2023 to Schaffnit complaining about the alleged mistreatment. *Id.* ¶ 41. A month later, Osinubi was given the worst performance evaluation she had ever received during her time at Sanofi. *Id.* ¶ 42. Up until the Schaffnit Letter, she received positive performance reviews with promises of promotion in face-to-face meetings with Schaffnit. *Id.* ¶¶ 15, 17. After the Schaffnit Letter, however, Osinubi was excluded from correspondence and events pertinent to her work, and she experienced a decline in the level of assigned responsibilities. *Id.* ¶¶ 43-44.

On September 28, 2023, Osinubi applied for a senior product manager role within the Hemophilia A team. ECF 18, at 23. She was faced with unusual interview requirements not typically required for non-Black colleagues, some of whom did not have to interview at all before being promoted. *Id.*; ECF 7, ¶ 27. Osinubi was not offered the position despite receiving compliments from multiple interviewers about her interview presentation. ECF 18, at 24. When she asked why she was not selected, Osinubi was given vague and contradictory responses. *Id.* Upal Kusari, a hiring manager who did not attend the interview, told her that she needed to improve her presentation skills, but also stated that those skills were not relevant to the position. *Id.* No hiring managers attended Osinubi's interview. *Id.* at 24-25.

3

Osinubi wrote a second letter (the "Foard Letter") in January 2024 to Sanofi's executive leadership, including Executive Vice President Brian Foard, about the allegedly discriminatory and hostile work environment she experienced. ECF 7, ¶ 50; *see* ECF 18, at 21-28. The letter was also sent to Sanofi's Human Resources team, but no action or investigation occurred in response. ECF 7, ¶¶ 51-52. When the ALTUVIIIO launch team was nominated for an award, Osinubi was omitted from the nominee list while a new, non-Black team member who did not participate in the launch was included. *Id*. ¶¶ 52-53. When she requested marketing work, she was told no work was available despite weekly emails highlighting marketing work related to ALTUVIIIO and other RBD products. *Id*. ¶ 55. In March 2025, for the first time during her tenure at Sanofi, Osinubi did not receive a cost-of-living adjustment to her pay. *Id*. ¶ 56. Schaffnit has not held a meeting or spoken a word to Osinubi since her performance review in March 2024. *Id*. ¶ 48. Indeed, Schaffnit cancelled their meetings and removed Osinubi's access to his calendar, making it impossible for her to perform her job of managing his calendar. *Id*. ¶¶ 45-46. Etaix attended only one meeting with Osinubi in 2024 and cancelled the remaining meetings for that year. *Id*. ¶ 49.

Osinubi brought a complaint against Sanofi with the Massachusetts Commission Against Discrimination ("MCAD") on March 8, 2024. ECF 17-1, at 4-5. In June 2025, she filed her original complaint in Middlesex Superior Court. ECF 1-2, at 6-17. Sanofi removed the case to this Court in August 2025, ECF 1, and Osinubi thereafter filed an amended complaint against the three Sanofi defendants, ECF 7. She asserts the following claims: a violation of the Massachusetts Equal Pay Act ("MEPA"), M.G.L. c. 149, § 105A (Count I); race and sex discrimination and hostile work environment in violation of M.G.L. c. 151B, § 4(1) (Counts II, III, and IV); retaliation in violation of M.G.L. c. 151B, § 4(4), and Title VII, 42 U.S.C. § 2000e-3(a) (Count V); race and sex discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a) (Count VI); and promissory

estoppel (Count VII). ECF 7, ¶¶ 60-66. Sanofi moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF 16.[2] After receiving the opposition, reply, and surreply briefs, the Court held a hearing and took the motion under advisement.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quotation marks omitted). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court may consider "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (quotation marks omitted).

## DISCUSSION

I.    **Scope of Title VII and Chapter 151B Claims.**

Sanofi first contends that most of the conduct underlying Osinubi's Title VII and Chapter 151B claims may not be considered because it occurred before the limitations period. Title VII and Chapter 151B require an employee to file an administrative charge with the Equal Employment

---

[2] Sanofi also moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), but none of its arguments go to subject matter jurisdiction.

Opportunity Commission or MCAD as a prerequisite to commencing a civil action for employment discrimination or retaliation. *See* 42 U.S.C. § 2000e-5(e)(1); M.G.L. c. 151B, § 5. In deferral jurisdictions like Massachusetts, plaintiffs must file a charge within 300 days of the alleged discriminatory or retaliatory act. *See* 42 U.S.C. § 2000e-5(e)(1) (the charge must be filed "within three hundred days after the alleged unlawful employment practice occurred" if the plaintiff instituted proceedings with a state or local agency); M.G.L. c. 151B, § 5 ("Any complaint . . . must be so filed within 300 days after the alleged act of discrimination."). An unexcused failure to meet this filing period forecloses recourse to the courts. *Rivera-Díaz v. Humana Ins. of Puerto Rico, Inc.*, 748 F.3d 387, 390 (1st Cir. 2014).

The parties agree that Osinubi filed an administrative charge with MCAD on March 8, 2024. Conduct that occurred in the 300 days before that date—i.e., between May 13, 2023 and March 8, 2024—is therefore timely and may be considered for purposes of her Title VII and Chapter 151B claims. Much of the alleged conduct underlying her claims of discrimination and retaliation—for example, the harsh interview requirements and failure to promote in September 2023, and the negative employment actions taken after Osinubi's submission of the Foard letter in January 2024—is thus timely. Still, the parties dispute whether the Court may consider incidents that occurred before May 13, 2023. Osinubi contends that incidents before that date may be considered under either the equitable tolling doctrine or the continuing violation doctrine. The Court addresses each theory in turn.

A.      Equitable Tolling.

"Equitable tolling suspends the running of the limitations period 'if the plaintiff, in the exercise of reasonable diligence, could not have discovered information essential to [her claim].'" *Ortega Candelaria v. Orthobiologics LLC*, 661 F.3d 675, 679-80 (1st Cir. 2011) (quoting *Barreto-*

6

*Barreto v. United States*, 551 F.3d 95, 100 (1st Cir. 2008)). The First Circuit "hew[s] to a 'narrow view' of equitable exceptions to Title VII limitations periods." *Mack v. Great Atl. and Pacific Tea Co., Inc.*, 871 F.2d 179, 185 (1st Cir. 1989). To qualify for equitable tolling, Osinubi must show that she "had no reason to be aware of [her] employer's improper motivation when the putative violation occurred," "the employer actively misled [her]," and she "relied on the (mis)conduct to [her] detriment." *Jensen v. Frank*, 912 F.2d 517, 521 (1st Cir. 1990).[3]

Osinubi has not alleged circumstances that would give rise to equitable tolling. Nothing in the amended complaint indicates that Sanofi actively misled Osinubi into delaying her filing of an administrative action. *See Earnhardt v. Commonwealth of Puerto Rico*, 691 F.2d 69, 71 (1st Cir. 1982) (explaining that an employer "[n]ot giving any reason [for alleged adverse treatment] is altogether different from providing a specious one"). Nor has Osinubi sufficiently alleged that she "had no reason to be aware of [Sanofi's] improper motivation when the putative violation occurred." *Jensen*, 912 F.2d at 521. Actual knowledge of a filing requirement is established "when an employee becomes generally aware that [she] possesses a legal right to be free from the type of discrimination [she] has alleged." *Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 48 (1st Cir. 2005). Osinubi was aware of suspected discrimination when, in February 2023, she submitted the Schaffnit Letter in which she "complained about the discrimination by management." ECF 7, ¶ 41. And she would have reasonably suspected retaliation when, soon after that letter, she received her most negative performance review during her time at Sanofi. *Id.* ¶ 42. Osinubi has not met her burden to show that equitable tolling is warranted.

---

[3] Osinubi does not dispute that "Massachusetts law concerning equitable tolling parallels federal law." *Wanshen Li v. MW S. Station, Inc.*, No. 15-cv-12961-FDS, 2017 WL 2407256, at *8 (D. Mass. June 2, 2017). The Court therefore assumes, without deciding, that the equitable tolling under Massachusetts and federal law are subject to the same standards.

B.     Continuing Violation Doctrine.

Osinubi alternatively asserts that incidents prior to May 13, 2023 should be considered in support of her Chapter 151B hostile work environment claim under the continuing violation doctrine.[4] The doctrine allows a plaintiff to recover for discriminatory conduct that would otherwise be time barred, so long as it is "part of an ongoing series of discriminatory acts and there is some violation within the statute of limitations period that anchors the earlier claims." *O'Rourke v. City of Providence*, 235 F.3d 713, 730 (1st Cir. 2001) (quotation marks omitted); *accord Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrimination*, 441 Mass. 632, 642-43 (2004). The doctrine is limited "to claims that cannot be said to occur on a particular day and that by their very nature require repeated conduct to establish an actionable claim, such as hostile work environment claims." *Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir. 2015).[5]

To plead a timely hostile work environment claim under Chapter 151B, Osinubi must allege "the existence of at least one incident of [discriminatory] conduct" within the limitations period that "substantially relates to earlier incidents of abuse, and substantially contributes to the continuation of a hostile work environment, such that the incident anchors all related incidents." *Cuddyer v. Stop & Shop Supermkt. Co.*, 434 Mass. 521, 533 (2001). The claim must arise from "a

---

[4] Osinubi does not assert a hostile work environment claim under Title VII.

[5] Osinubi does not contend that the continuing violation doctrine applies to her discrimination and retaliation claims under Title VII and Chapter 151B. Those claims concern "discrete acts" that are "easily identifiable" and immediately actionable. *Ayala*, 780 F.3d at 57 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). The alleged conduct that preceded May 13, 2023—for example, the lower performance review after the Schaffnit Letter and the denial of recognition for Osinubi's product launch work, ECF 7, ¶¶ 35, 41-42—therefore cannot constitute adverse action to support her discrimination and retaliation claims, though it may "'be admitted as relevant background evidence to show that discriminatory animus motivated the acts that occurred within the statute of limitations.'" *Rae v. Woburn Pub. Schs.*, 113 F.4th 86, 110 (1st Cir. 2024) (quoting *Malone v. Lockheed Martin Corp.*, 610 F.3d 16, 22 (1st Cir. 2010)); *see Morgan*, 536 U.S. at 113 ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.").

series of related events that have to be viewed in their totality in order to assess adequately their discriminatory nature and impact." *Id.* at 531. The continuing violation doctrine applies "unless the plaintiff knew or reasonably should have known that her work situation was pervasively hostile and unlikely to improve," such that the situation reasonably seemed "hopeles[s]." *Id.* at 539-40.

Sanofi's failure to promote Osinubi in September 2023, and her supervisors' refusal to speak or meet with her in the months that followed, are adverse acts that anchor her hostile work environment claim within the limitations period. Sanofi disagrees, arguing that the series of events that Osinubi alleges have no relation to one another. But a hostile work environment claim is typically "not confined to one act . . . [at] one time; rather, it is a composite of workplace action and inaction." *Id.* at 533. The failure to promote her and the ostracism from her team and managers, "when linked together," plausibly suggest a "pattern of mistreatment" based on race, where less experienced non-Black colleagues were promoted but Osinubi, the only Black woman on her team, received positive performance reviews for her work and was the sole person on her team not to have been promoted. *Id.* Sanofi also contends that the continuing violation doctrine is inapplicable because Osinubi was aware by February 2023 that she was being unlawfully discriminated against and failed to file a timely administrative charge. The Court disagrees. Osinubi's letter to Schaffnit in February 2023 does not suggest that Osinubi knew that her work situation was hopeless. *See Williams v. City of Holyoke*, 84 Mass. App. Ct. 1111, 2013 WL 5223594, at *2 (2013) (Rule 1:28 decision) (seeking counseling and filing grievance with local union "readily indicate[d] that the plaintiff had not concluded that her work environment was 'unlikely to improve'"). As alleged, it was not until Osinubi's letter to Foard in January 2024 that she realized her situation was unlikely to improve. ECF 7, ¶ 51; ECF 18, at 27. And Osinubi filed an administrative charge with MCAD two months later, in March 2024. Accordingly, the continuing violation doctrine applies to

9

Osinubi's hostile work environment claim, and the Court may look to events before May 13, 2023 when considering that claim.

## II.   Race and Sex Discrimination Claims.

Counts II, III, and VI assert that Sanofi discriminated against Osinubi based on her race and sex in violation of Title VII and Chapter 151B. "Title VII's primary objective is to ensure a workplace where individuals are not discriminated against because of their race, ethnicity, religion, or gender." *Stratton v. Bentley Univ.*, 113 F.4th 25, 38 (1st Cir. 2024) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006)). The statute makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race" or "sex." 42 U.S.C. § 2000e-2(a)(1). Chapter 151B similarly makes it unlawful for an employer "to discriminate against [an] individual in compensation or in terms, conditions or privileges of employment" because of the race or sex of that individual. M.G.L. c. 151B, § 4(1). Chapter 151B claims "operate under a standard that is indistinguishable from Title VII." *Leaver v. Life Care Ctrs. of Am., Inc.*, 712 F. Supp. 3d 194, 201 (D. Mass. 2024); *see also Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003) (noting Title VII's framework is "also applied when evaluating discrimination claims under Chapter 151B").

Absent direct evidence of discrimination, courts use the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to assess discrimination claims under Title VII and Chapter 151B. *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 112-13 (1st Cir. 2015). To prevail, Osinubi must first establish a prima facie case by showing that: "(1) she is a member of a protected class; (2) she is qualified for the job . . . ; (3) she has suffer[ed] an adverse employment action at the hands of her employer; and (4) there is some evidence of a causal

10

connection between her membership in a protected class and the adverse employment action." *Luceus v. Rhode Island*, 923 F.3d 255, 258 (1st Cir. 2019) (quotation marks omitted). While she "need not plead facts sufficient to establish a prima facie case" to survive a motion to dismiss, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013). The parties dispute whether the amended complaint plausibly alleges the third and fourth prongs of a prima facie case. The Court will address them in turn.

A.    Adverse Employment Action.

"An 'adverse employment action' is one that 'affect[s] employment or alter[s] the conditions of the workplace." *O'Horo v. Bos. Med. Ctr. Corp.*, 131 F.4th 1, 17 (1st Cir. 2025) (quoting *Morales-Vallellanes v. Potter*, 605 F.3d 27, 35 (1st Cir. 2010)). "[S]uch an action typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Id.* at 17-18 (citations and quotation marks omitted). While a plaintiff "must show some harm respecting an identifiable term or condition of employment," she need not prove that "the harm incurred was 'significant.'" *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024).

The amended complaint plausibly alleges that Osinubi suffered an adverse employment action within the limitations period. After having been promised a promotion for years, Osinubi applied for a senior product manager role within the Hemophilia A team in September 2023 and experienced harsher interview requirements than are typical for the role. ECF 18, at 23. Osinubi was denied the promotion despite receiving praise from her interviewers, and she was given contradictory feedback when she asked why she was not selected. *Id.* at 24. This failure to promote plausibly constitutes an adverse employment action under Title VII. *See Deangelis v. Hasbro, Inc.*,

11

165 F.4th 646, 657 (1st Cir. 2026) (citing cases and finding discrimination claim plausible where the complaint identified specific promotions denied to plaintiffs).

B.        Causal Connection.

Osinubi also must plausibly allege that the adverse employment action was taken because of her race or sex. *Waleyko v. Phelan*, 146 F.4th 89, 95 (1st Cir. 2025); *see Rodríguez-Reyes*, 711 F.3d at 56 (the complaint "need not *establish* this element . . . [and] need only show that the claim of causation is plausible"). "[C]ircumstantial evidence often suffices to clarify" this element. *Rodríguez-Reyes*, 711 F.3d at 56.

Sanofi argues that Osinubi has offered nothing more than conclusory allegations connecting her race or sex to the adverse employment action. The Court agrees in part; the amended complaint suggests a plausible causal connection between the failure to promote and her race, but not her sex. Osinubi alleges that, during her September 2023 interview, she experienced "unusual interview requirements" and received vague and contradictory feedback on why she was not offered the role, while non-Black employees were not subjected to a similar interview process. ECF 18, at 23-24; ECF 7, ¶ 27. In some cases, she alleges, non-Black employees with less experience and length of service did not have to interview before being promoted. ECF 7, ¶¶ 26-27; ECF 18, at 25. As the sole Black woman on her team, she was the only member to not be promoted despite receiving consistently positive performance reviews. ECF 7, ¶¶ 15, 26. These allegations give rise to a plausible causal nexus between Osinubi's race and the denial of a promotion. *See Stratton*, 113 F.4th at 44 ("[A] substantive discrimination claim . . . ca[n] rest on evidence that a plaintiff's protected [characteristic] was merely one of the employer's motivations for an adverse action."). She fails, however, to plead facts that support a plausible causal connection between the failure to promote or other timely adverse employment action and her sex.

She does not allege, for example, that women were subject to more rigorous interview requirements than men, or that women on her team were not promoted. Accordingly, Osinubi's race discrimination claims under Title VII and Chapter 151B survive, but the corresponding sex discrimination claims will be dismissed.

### III.    Retaliation Claims.

Count V asserts that, in violation of Title VII, 42 U.S.C. § 2000e-3(a), and M.G.L. c. 151B, § 4(4), Sanofi retaliated against Osinubi when she reported discriminatory behavior to her manager and Sanofi's executive leadership. ECF 7, ¶ 64. A prima facie case of retaliation requires a plaintiff to allege that "'(1) she engaged in protected activity; (2) she suffered some materially adverse action; and (3) the adverse action was causally linked to her protected activity.'" *Stratton*, 113 F.4th at 41-42 (quoting *Dixon v. Int'l Bhd. of Police Officers*, 504 F.3d 73, 81 (1st Cir. 2007)).[6] "[T]here is no requirement to plead a complete prima facie case of liability" in a retaliation claim. *Deangelis*, 165 F.4th at 652-53 (reading the complaint as a whole to determine plausibility). Though the amended complaint alleges two instances of protected activity—the Schaffnit Letter and Foard Letter—only the latter constitutes timely protected activity because the Schaffnit Letter was submitted before May 13, 2023. *See Ray*, 799 F.3d at 108 ("Protected opposition activity includes . . . writing letters protesting an employer's allegedly unlawful actions.").

#### A.    Adverse Action.

An action is materially adverse "if it 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Stratton*, 113 F.4th at 42 (quoting *Burlington N.*, 548 U.S. at 57). A materially adverse action "need not have 'a dramatic impact' on a plaintiff's job or

---

[6] Neither party disputes that the legal analysis for a retaliation claim under Title VII and Chapter 151B is the same.

even 'relate to the terms or conditions of employment.'" *Id.* at 44 (quoting *Billings v. Town of Grafton*, 515 F.3d 39, 54 (1st Cir. 2008)). At the pleading stage, the allegations in the complaint need only "possess sufficient 'cumulative weight' to 'plausibly paint a picture that would allow a factfinder to find [Sanofi's] conduct sufficient to deter a reasonable person' from engaging in protected conduct." *Deangelis*, 165 F.4th at 654 (quoting *Rodríguez-Vives v. P.R. Firefighters Corps of Puerto Rico*, 743 F.3d 278, 285-86 (1st Cir. 2014)).

The amended complaint plausibly alleges materially adverse actions following Osinubi's Foard Letter in January 2024. ECF 7, ¶¶ 50, 52. Both of her supervisors stopped speaking and interacting with her. Schaffnit, her immediate manager, has not met or spoken to her since the March 2024 performance review. *Id.* ¶ 48. Etaix, her second manager, met with her only once and cancelled any remaining meetings in 2024. *Id.* ¶ 49. She was excluded from the "Breaking Barriers Award" list of nominees that included the entire ALTUVIIIO launch team, of which she was a part. *Id.* ¶¶ 52-53. And she was told that no marketing work was available despite weekly group emails indicating otherwise. *Id.* ¶ 55. These are actions that would "well dissuade a reasonable worker from making or supporting a charge of discrimination." *Stratton*, 113 F.4th at 42.

    B.    <u>Causal Connection.</u>

A plaintiff must also plausibly allege that the "protected activity was a but-for cause of the alleged adverse action by the employer." *Id.* at 44 (quotation marks omitted). "[A]n inference of causation may be appropriate where there is close temporal proximity between protected activity and an adverse action." *Id.* at 45. However, a complaint must be read "holistically and [not] ignor[e] relevant context." *Garayalde-Rijos v. Mun. of Carolina*, 747 F.3d 15, 25 (1st Cir. 2014) (emphasizing temporal proximity "is merely one factor relevant to causation" and is usually considered "later in the proceedings . . . at summary judgment."). Retaliation need not be "the only

14

possible explanation for [Sanofi's] actions," nor the "most probable." *Deangelis*, 165 F.4th at 654-55.

Osinubi plausibly alleges that the Foard Letter was a but-for cause of her exclusion from her supervisors, team, and marketing work. While the amended complaint does not outline the exact temporal gap between the Foard Letter and each adverse action, when drawing all inferences in Osinubi's favor, it is a "common-sense, plausible reading" of the complaint that Sanofi retaliated against her for submitting the Foard Letter. *Garayalde-Rijos*, 747 F.3d at 25. After the letter was sent to Foard and the human resources department in January 2024, Osinubi's supervisors effectively cut off communications with her. ECF 7, ¶¶ 48-50, 52. Furthermore, no action was taken to address Osinubi's concerns. *Id.* ¶ 51; *see Ortiz v. Fed. Bureau of Prisons*, 290 F. Supp. 3d 96, 108 (D. Mass. 2017) (finding causation bolstered by the fact that the plaintiff repeatedly complained about discriminatory practices and the defendants "failed to adequately respond to or investigate any of them"). Accordingly, Osinubi's retaliation claims survive the motion to dismiss.

## IV.    Hostile Work Environment Claim.

Count IV alleges a hostile work environment claim under Chapter 151B.[7] A hostile work environment is one that is "'pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, [and that] poses a formidable barrier to the full participation of an individual in the workplace.'" *Cuddyer*, 434 Mass. at 532 (quoting *College-Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination*, 400 Mass. 156, 162 (1987)). While "many incidents

---

[7] Chapter 151B and Title VII hostile work environment claims are addressed "under substantively similar standards." *Walker v. City of Holyoke*, 523 F. Supp. 2d 86, 106 (D. Mass. 2007). While Osinubi brings a hostile work environment claim under only Chapter 151B, she does not argue that the claim is treated differently from hostile work environment claims under Title VII. In general, Massachusetts courts "apply Federal case law construing the Federal anti-discrimination statutes in interpreting G.L. ch. 151B." *Wheatley v. Am. Tel. & Tel. Co.*, 418 Mass. 394, 397 (1994).

in isolation may not be serious enough for [a] complaint," "when linked together, the seemingly disparate incidents may show a prolonged and compelling pattern of mistreatment." *Id.* at 532-33.

To make a prima facie case, Osinubi must allege: "(1) that [she] is a member of a protected class; (2) that [she] was subjected to unwelcome harassment; (3) that the harassment was based upon [race or sex]; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of [her] employment and create an abusive work environment; (5) that objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established." *Garmon v. Nat'l R.R. Passenger Corp.*, 844 F.3d 307, 317 (1st Cir. 2016) (citations omitted). Though the conduct may be both severe and pervasive, "only one of the qualities must be proved in order to prevail." *Flood v. Bank of Am. Corp.*, 780 F.3d 1, 11 (1st Cir. 2015).

Sanofi contends that Osinubi's allegations do not describe harassment so severe or pervasive to impact her employment in any material way. The Court disagrees: the amended complaint alleges persistent demeaning treatment during Osinubi's tenure at Sanofi. She was repeatedly denied training and career advancement opportunities. ECF 7, ¶¶ 23, 28. When she applied for a promotion, she was subjected to a harsher interview process than her non-Black colleagues. *Id.* ¶¶ 26-27; ECF 18, at 23-24. She was sidelined in multiple marketing meetings and consistently excluded from team events and recognition. ECF 7, ¶¶ 35-37, 43-47, 49, 52-53, 55; *see Clifton v. Mass. Bay Transp. Auth.*, 445 Mass. 611, 616 n.5 (2005) (hostile work environment may manifest by "a series of harassing acts" likening to "pinpricks [that] only slowly add up to a wound" (citation omitted)). At one point, Schaffnit removed Osinubi's access to his calendar, making it impossible for her to fulfill a primary job responsibility. ECF 7, ¶¶ 45-47. Considering

16

all the circumstances, Osinubi plausibly alleges pervasive harassment that altered the terms or conditions of her employment.

Sanofi also contends that Osinubi has not connected the mistreatment to her race or sex. While the amended complaint states only conclusory allegations that the harassment was based on sex, it does sufficiently allege a hostile work environment based on race. Osinubi was subjected to unusually rigorous interview requirements not imposed on her non-Black colleagues. ECF 7, ¶ 27; ECF 8, at 23-25. As the sole Black woman on her marketing and launch team, she was frequently excluded from events and marginalized. ECF 7, ¶¶ 35-40, 52-53. And even if not all acts were motivated by race, Osinubi has plausibly alleged that the harassment as a whole was because of her race. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 662 (6th Cir. 1999) ("[E]ven though a certain action may not have been specifically racial in nature, it may contribute to the plaintiff's proof of a hostile work environment if it would not have occurred but for the fact that the plaintiff was African American."). Accordingly, Osinubi's sex-based hostile work environment claim will be dismissed, but her race-based hostile work environment claim remains.

## V.    Massachusetts Equal Pay Act Claim.

Osinubi claims in Count I that Sanofi violated MEPA by paying her "significantly less than white and male colleagues performing equivalent work." ECF 7, ¶ 60. The Act prohibits gender-based discrimination in the payment of wages to employees performing "comparable work," unless the wage variation is based on certain factors such as seniority, a merit system, quantity or quality of production, geographic location, education, or training. M.G.L. c. 149, § 105A(a)-(b). The "comparable work" standard requires a two-part analysis. *Jancey v. Sch. Comm. of Everett*, 421 Mass. 482, 489 (1995). First, the court "must determine whether the substantive content of the jobs is comparable, that is, whether the duties of the jobs have 'important common characteristics.'"

17

*Id.* (citation omitted). Two positions are not "comparable" where they "are so dissimilar in their substantive content that a reasonable person would regard them as categorically separate." *Id.* at 489-90. Second, if the first prong is met, the court inquires "whether the two positions entail comparable skill, effort, responsibility, and working conditions." *Id.* at 490. If both prongs are satisfied, the "employees in the two positions must receive equal pay." *Id.*

Osinubi's claim fails to pass muster at the first step. The amended complaint alleges that Osinubi was repeatedly given "equivalent tasks" to colleagues who were compensated at higher rates. ECF 7, ¶¶ 19-22, 24. But it contains no allegations specifying the "equivalent tasks" Osinubi claims to have performed, nor does it describe the substantive content of the jobs Osinubi and her coworkers performed. In addition, the amended complaint does not identify any male "comparator employee" with similar job responsibilities and working conditions who was "more generously compensated." *Petsch-Schmid v. Boston Edison Co.*, 914 F. Supp. 697, 706 (D. Mass. 1996) (dismissing MEPA claim for failing to identify male comparator). Because the amended complaint lacks concrete factual allegations supporting Osinubi's assertion that she performed "comparable work" to more highly compensated male counterparts, the MEPA claim will be dismissed.

## VI.    <u>Promissory Estoppel Claim.</u>

Count VII asserts that Sanofi, through Schaffnit, "made clear and definite promises of advancement and promotion" to Osinubi, and that she "reasonably and foreseeably relied on those promises by accepting and remaining in a gig role at Sanofi and limiting her applications to internal positions." ECF 7, ¶ 66. To state a claim for promissory estoppel under Massachusetts law, "a plaintiff must allege that (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by

enforcement of the promise." *MacKenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 496 (1st Cir. 2013) (quotation marks omitted); *see Sullivan v. Chief Justice for Admin. & Mgmt. of the Trial Ct.*, 448 Mass. 15, 27-28 (2006). "An essential element under the promissory estoppel theory is that there be an unambiguous promise and that the party to whom the promise was made reasonably relied on the representation." *Rhode Island Hosp. Tr. Nat'l Bank v. Varadian*, 419 Mass. 841, 848 (1995).

Sanofi argues that the alleged statements made by Schaffnit are too vague to support a promissory estoppel claim. *See Dexter v. Dealogic,* LLC, 390 F. Supp. 3d 233, 245 (D. Mass. 2019) (finding statement that "work this year [will] pay off" too vague to serve as an enforceable promise). But the amended complaint alleges that Osinubi received "clear, unambiguous promises of advancement and promotion." ECF 7, ¶ 17. Osinubi claims that Schaffnit "consistently t[old] [her] she had a promising future" and "shortly . . . would be promoted to product manager as she had been excelling in work performance commensurate with the role of a product manager." *Id*. ¶¶ 31-32. He also "repeatedly assured her that her work on ALTUVIIIO would result in career advancement" and "promise[d] . . . open roles to come on the Hemophilia team." *Id*. ¶ 34. Unlike "vague assurance[s] that some kind of [change] would be forthcoming," Schaffnit made a specific promise of a promotion and provided concrete details about the role Osinubi would receive. *In re JPMorgan Chase Mortg. Modification Litig.*, 880 F. Supp. 2d 220, 241 (D. Mass. 2012).

Sanofi next asserts that, even if Osinubi did allege a sufficiently definite promise, she has not reasonably relied on this promise to her detriment. The Supreme Judicial Court has not decided whether "continued employment alone is sufficient to establish detrimental reliance." *Suominen v. Goodman Indus. Equities Mgmt. Grp., LLC*, 78 Mass. App. Ct. 723, 732 n.11 (2011). But Osinubi does not rely solely on her continued employment to establish detrimental reliance; she also plausibly alleges that she relied on Schaffnit's promises by remaining in a gig role for six times

19

longer than its standard duration, working over forty hours per week, without a salary increase. ECF 7, ¶¶ 30-31. During this time, she declined to apply for roles at other companies and performed additional work not within her job responsibilities, which she would not have done without Schaffnit's promises. *Id.* ¶¶ 18, 31; *see Nardone v. LVI Servs., Inc.*, 94 Mass. App. Ct. 326, 333 (2018) (a jury could find the requisite detriment when a plaintiff did additional roadshow presentations not required by his job and which he would not have done without the defendant's promise). Accordingly, Osinubi has plausibly alleged a promissory estoppel claim.

**CONCLUSIONS AND ORDERS**

For the foregoing reasons, the defendants' motion to dismiss, ECF 16, is GRANTED in part and DENIED in part. The Massachusetts Equal Pay Act claim (Count I), state and federal sex discrimination claims (Counts III and VI), and sex-based hostile work environment claim (Count IV) are DISMISSED. The state and federal race discrimination claims (Counts II and VI), race-based hostile work environment claim (Count IV), state and federal retaliation claims (Count V), and promissory estoppel claim (Count VII) will proceed to discovery.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: April 13, 2026